## GODMAN ET AL. *v.* MEIXSEL ET AL.

PLEADING.—*Departure.*—Complaint for money paid, laid out and expended by the plaintiff for the defendant, at his special instance and request, a bill of particulars filed with the complaint being an account for a certain amount of corn purchased at a certain price.

*Held*, that a reply claiming for money paid by the plaintiff to satisfy a purchaser for a contemplated non-performance of a contract for the delivery of corn by the defendant to such purchaser was not a departure.

CONTRACT.—*Performance.*—A request made by a principal to his commission merchant to buy corn to fill the balance of a quantity of corn which the former had contracted to sell to a third person did not authorize the commission merchant to pay money to the purchaser to discharge the obligation of the seller, it not appearing that the corn was deliverable under the contract at the time the money was so paid.

From the Tippecanoe Civil Circuit Court.

*J. M. LaRue*, for appellants.

*W. D. Wallace, A. A. Rice* and *J. F. McHugh*, for appellees.

DOWNEY, C. J.—There is but one assignment of error in this case which presents any question for decision, and that is, that the court erred in overruling the appellants' demurrer to the first paragraph of the appellees' reply to the second paragraph of the answer.

The action was by the appellees against the appellants for balance due for money paid, laid out and expended by the plaintiffs for the defendants, at their special instance and request, and for interest thereon, a bill of particulars of which is filed with the complaint. The disputed item is thus charged: "1873. Sept. 18. To 14,347$\frac{8}{56}$ bus. corn purchased at 64c., $9,182.17." Various items are stated in the account before and after this one, and the balance stated is six hundred and eighteen dollars and ninety-six cents.

It is alleged in the second paragraph of the answer, that, as to so much of the plaintiffs' complaint as counts upon the purchase of fourteen thousand three hundred and forty-seven and eight fifty-sixths bushels of corn at sixty-four cents per bushel, the defendants say, that in September, 1873, they were filling a contract for the sale of a large quantity of corn in the city of Baltimore; that because of delays in transportation of corn to said city, the defendants telegraphed said plaintiffs to purchase a sufficient quantity of corn to fill such contract; that the plaintiffs advised these defendants that they could not purchase corn at less than sixty-four cents per bushel, and that they would await orders. These defendants aver that they gave no further orders, but that shortly afterwards, owing to the panic, the price of corn in Baltimore dropped to fifty cents per bushel; and defendants aver that said plaintiffs purchased said corn or furnished the same themselves, and fraudulently claim therefor sixty-four cents per bushel; that said corn was purchased without further orders, and after defendants were advised that plaintiffs would not purchase without further orders. Wherefore, etc.

The first paragraph of the reply to the second paragraph of the answer contains the following averments: that the defendants were, in September, 1873, endeavoring to fill a contract for the sale, theretofore made by them, through the plaintiffs, of a large quantity of corn, in the city of Baltimore, Maryland, as is averred by the defendants in their said paragraph of answer; that on the 17th day of that month their contract remained unfulfilled on their part by

fourteen thousand three hundred and forty-seven and eight fifty-sixths bushels of corn, at which date they telegraphed to plaintiffs, who were and are commission merchants and grain dealers in said city, through whom they (the defendants) had been transacting their business in said city, as follows: "Buy corn to fill balance of our sale." That upon the receipt of this telegram, on the 17th of September, they endeavored to buy the requisite amount of corn to fill said contract, on the best terms possible for the defendants, but found that they could not do so for less than sixty-four cents per bushel; that they also called upon Mr. Radcliff, the purchaser from the defendants, and endeavored to settle with him for the balance of the corn on the most favorable terms possible for the defendants, but found that he would not settle upon a more favorable basis than sixty-four cents per bushel; that they thereupon, in good faith and in the hopes that they might buy at better figures the next day, concluded to wait, and did wait until the next day, the 18th day of September, when they tried the market again, but found, after diligent inquiry, that they could not purchase the balance of the corn required to fill defendants' contract at less than sixty-four cents per bushel, and that the purchaser, Radcliff, would not settle on a more favorable basis than sixty-four cents per bushel; wherefore they, in good faith, and in compliance with the true intent and spirit of said telegram received from the defendants, settled on the said 18th day of September, with the purchaser, Radcliff, for said balance of said corn, on the basis of sixty-four cents per bushel, that being the best they could do, and paid out their own funds therefor, as shown in the complaint, and thereby fulfilled the defendants' contract and relieved them from all further liability on account of the same. They further say that, after finding, on the 17th of September, that they could not buy corn for less than sixty-four cents per bushel, and after having concluded, as aforesaid, to wait until next day, to see if they could not do better, they mailed a

letter at Baltimore to the defendants at Lafayette, Indiana, reading as follows, to wit:

"No. 149 PRATT STREET, BALTIMORE,
"Sept. 17th, 1873.

"MESSRS. GODMAN & TAYLOR, Lafayette, Ind.:

"Gentlemen, Your telegram of this A. M. to hand, as follows: 'Buy corn to fill balance of our sale.' We have seen purchaser, who refuses to settle at less than sixty-four cents. This we deem too strong, although there is over fourteen thousand bushels short, and no large lots offering, the stock in elevator being held by shippers. Will try to-morrow, and make a more satisfactory settlement if possible. No sales reported to-day; nominally sixty-three. Likely to have another blockade for want of vessels. Oats steady and rather firm at forty-four to forty-eight. Wheat dull and heavy," etc.

"Yours truly,

"MEIXSEL & Co."

And plaintiffs further say, that they deny that they were guilty of any fraud or bad faith in the matter; but aver that they acted in the best of good faith throughout, and with an eye to the best interests, as they thought, of the defendants. They further say that the matters herein set forth are the same identical matters and things complained of by the defendants in their said second paragraph of answer, and for and on account of which they seek for the relief therein prayed. Wherefore, etc.

It is urged by the appellants that the reply departs from the complaint; that the complaint is for money paid for the purchase of corn, giving the number of bushels and pounds, and that the reply claims for money paid to satisfy a purchaser for a contemplated non-performance of a contract for the delivery of corn, and shows that not a pound of corn was actually purchased.

Taking the complaint and bill of particulars together, we think there is no substantial discrepancy between them and the reply, and hence no real departure.

Godman *et al. v.* Meixsel *et al.*

Again, it is insisted that, according to the allegations of the reply, the plaintiffs had no authority to pay money in discharge of the obligation of the defendants to deliver corn, but, by the terms of the instruction contained in the telegram, could only purchase corn to fill the contract. We think this position is well taken. It does not appear that the corn was deliverable on the contract when the money was paid by the plaintiffs. They were not authorized to pay money, but only to buy corn to fill the balance of the contract. For aught that appears, there was no necessity to purchase the corn or to pay the money at the time when the money was paid. We are not required, therefore, to decide whether the plaintiffs might, if the time for the delivery of the corn had arrived, pay the amount in money or not.

The answer alleges that shortly after the time of sending the dispatch, owing to the panic, the price of corn dropped to fifty cents per bushel. If the time for delivering the corn had not arrived when the money was paid, and did not arrive until after the decline in the price, the defendants might have purchased the corn at less than sixty-four cents, or paid for the non-delivery at a reduced rate. The reply should, at least, have shown that the plaintiffs had a right to pay the money for the non-delivery of the corn at the time when the payment was made. But we need not decide whether they would have had a cause of action in that event. But what we do decide is, that upon the facts in the reply the plaintiffs cannot recover.

The judgment is reversed, with costs, and the cause remanded with instructions to sustain the demurrer to the first paragraph of the reply to the second paragraph of the answer.